1

2

3

4

5

6                               UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
7                                         AT SEATTLE

8   DUKE YOUNG, et al.,

9                     Plaintiff,              Case No. C20-1816-LK-SKV

10          v.                                ORDER ON PLAINTIFF'S MOTION
                                              TO COMPEL AND DEFENDANT'S
11  SAFECO INSURANCE COMPANY OF               MOTION TO CONTINUE
    AMERICA,
12
                      Defendant.
13

14

15                          I.        INTRODUCTION

16          This is an insurance bad faith lawsuit arising out of Defendant Safeco Insurance

17  Company of America's alleged mishandling of a claim for property damage to a rental property

18  owned by Plaintiffs Duke Young and K221, LLC in Kirkland, Washington.[1]  This matter comes

19  before the Court on (1) Plaintiff's Motion to Compel Defendant to produce information Plaintiff

20  contends Defendant wrongfully withheld in discovery, *see* Dkt. 12; (2) Plaintiff's request for

21  attorneys' fees and costs incurred in bringing his Motion, *id.* at 13; and (3) Defendant's Motion

22  to Continue the case schedule, Dkt. 20.  Defendant opposes Plaintiff's Motion to Compel,

23          _____

            [1] Plaintiff K221 is a limited liability company organized under the laws of the State of
    Washington. Dkt. 1 ¶ 2.  Plaintiff Young is the sole member of Plaintiff K221. *Id.*; Dkt. 13 ¶ 2.  Both
    Plaintiff Young and Plaintiff K221 are collectively referred to as "Plaintiff" herein.

    ORDER ON PLAINTIFF'S MOTION TO
    COMPELL AND DEFENDANT'S MOTION TO
    CONTINUE - 1

arguing the information Plaintiff seeks is protected by either attorney-client privilege or the work product doctrine. *See* Dkt. 15. Plaintiff opposes Defendant's Motion to Continue to the extent it seeks an extension to a deadline Plaintiff alleges Defendant has already missed. *See* Dkt. 21. Having thoroughly considered the parties' briefing and the relevant record, the Court GRANTS IN PART Plaintiff's Motion to Compel, Dkt. 12, and GRANTS Defendant's Motion to Continue, Dkt. 20, for the reasons explained herein.

II.   BACKGROUND

A.   Defendant's Denial of Plaintiff's Insurance Claim

Plaintiff owns a residential rental property in Kirkland, Washington ("Rental Property"). Dkt. 1 ¶ 7; Dkt. 13 ¶ 2. Defendant issued a series of "Landlord Protection" insurance policies to Plaintiff which covered the Rental Property. Dkt. 1 ¶ 7. In 2018, Plaintiff leased the Rental Property to a tenant. *Id.* at ¶ 8. The lease agreement provided that the tenant would not make any modifications to the Rental Property without Plaintiff's prior written approval. Dkt 13 ¶ 5; Dkt. 13-1 at 3.

On April 14, 2019, Plaintiff's tenant was discovered deceased inside the Rental Property. Dkt. 13 ¶ 3. The decedent had passed away several days prior and his body had started to decompose, causing damage to the Property. *Id.* Plaintiff also discovered at that time that the tenant had removed and altered certain of the Property's structural elements and made other modifications without Plaintiff's permission. *Id.* at ¶ 4.

On April 17, 2019, Plaintiff submitted an insurance claim to Defendant for the vandalism caused by the tenant's unauthorized modifications to the Rental Property and for biohazard damage caused by the decomposition of the tenant's body. Dkt. 13 ¶ 6. On April 26, 2019, Plaintiff provided Defendant with access to the Rental Property so it could inspect the damage.

1   *Id.* Following the inspection, on May 6, 2019, Defendant denied the vandalism portion of

2   Plaintiff's claim, alleging there was no evidence that the tenant acted with malicious intent and

3   that the unauthorized modifications were more properly construed as a "remodel," so were not

4   covered by Plaintiff's policy. Dkt. 13-2 at 3–5; Dkt. 18-1 at 2–3. On September 23, 2019,

5   Defendant also denied the biohazard portion of Plaintiff's claim on the ground that the Rental

6   Property sustained "no physical damage" from the decomposition of the tenant's body. Dkt. 13-

7   3 at 2. On September 24, 2019, Defendant closed Plaintiff's claim. Dkt. 18-2 at 2.

8        On August 10, 2020, after retaining counsel, Plaintiff notified Defendant that he intended

9   to assert a claim against it for violation of Washington's Insurance Fair Conduct Act, RCW

10   48.30.015. Dkt. 1 ¶ 14; Dkt. 14-2 at 2–5. Defendant then retained attorney Matthew Adams

11   "solely in response to the 20 Day IFCA notice to provide legal advice regarding [Defendant's]

12   duties and obligations under the policy, and to convey [Defendant's] decision to insured's

13   counsel." Dkt. 17 ¶ [4]; *see also* Dkt. 16 ¶ 3. Defendant alleges that Mr. Adams "conducted no

14   investigation, spoke with no witnesses, obtained no documents, and did not perform any other

15   claims handling functions" in relation to Plaintiff's claim. Dkt. 17 ¶ [4]; *see also* Dkt. 16 ¶ 3.

16        On August 28, 2020, Mr. Adams wrote to Plaintiff's counsel, informing him that

17   Defendant wished "to cure" its breach of Plaintiff's insurance policy and "w[ould] accept

18   coverage for the [vandalism and biohazard] losses." Dkt. 14-3 at 2. Mr. Adams also indicated

19   that the two losses appeared to be "two separate claims" and informed Plaintiff's counsel that

20   Defendant would "set up a second claim to address the renovations." *Id.* Finally, Mr. Adams

21   requested that Plaintiff provide Defendant with "an estimate for the cost to repair the

22   unauthorized renovations." *Id.*

23

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 3

On September 6, 2020, Defendant paid Plaintiff for the biohazard damage.  Dkt. 14 ¶ 6. On October 7, 2020, however, Defendant asked Plaintiff to make the Rental Property available for a second inspection so it could reassess the vandalism portion of Plaintiff's claim.  *Id.* at ¶ 7. Plaintiff alleges that because Defendant had previously denied his claim, he had already undertaken repairs to correct the vandalism and the "unauthorized alterations made by the tenant had already been removed."  Dkt. 13 ¶ 9.  On October 28, 2020, by letter to Mr. Adams, Plaintiff's counsel rejected Defendant's request to conduct a second inspection and provided Defendant with an estimate for repairing the vandalism.  Dkt. 14 ¶ 9; Dkt. 14-4 at 2–3.

On November 25, 2020, Mr. Adams responded to Plaintiff's counsel, informing him that although Defendant had accepted coverage for the vandalism claim, it denied that it had previously unreasonably denied coverage and believed much of the repair work quoted in Plaintiff's estimate was unrelated to the damage caused by the tenant.  Dkt. 18-7 at 2–3.  The letter explained the scope and extent of Plaintiff's policy coverages, outlined certain exclusions, *id.* at 2–3, and again requested a second inspection of the Rental Property, providing that if Plaintiff declined, Defendant would "make its best estimate, based upon the photos it took during its investigation, to identify those area[s] that appear to have been caused by the tenant, and pay for those damages accordingly[,]" *id.* at 3.

On December 17, 2020, following receipt of Mr. Adams's letter, Plaintiff filed this lawsuit.  *See* Dkt. 1.

    B.    <u>The Present Discovery Dispute</u>

In March 2021, in conjunction with its Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1)(A), Defendant provided Plaintiff with all documents "relevant to this matter," including "the subject policy issued by [Defendant], communications with the plaintiff,

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 4

investigation of the subject claims, and documents received from plaintiff." Dkt. 18-8 at 6; *see also* Dkt. 14 ¶¶ 3, 12–15. At the same time, Defendant provided Plaintiff with a privilege log detailing certain redactions to those documents. Dkt. 18-8 at 8–10; Dkt. 14-6.

Subsequently, on March 22, 2021, Plaintiff served Defendant with his First Set of Interrogatories and Requests for Production, Dkt. 14 ¶ 11; Dkt. 18-9, which Defendant responded to on May 5, 2021, Dkt. 14 ¶ 11; Dkt. 14-5. Plaintiff contends Defendant failed to adequately respond to certain of these discovery requests. Specifically:

1. Plaintiff's Request for Production No. 2 asked Defendant to produce its entire "claim file and any other documents" that pertained to Defendant's activities related to its receipt, investigation, analysis of, or response to Plaintiff's claim. Dkt. 18-9 at 9. Defendant responded by pointing to the redacted claim file it had produced with its Initial Disclosures and by reproducing the privilege log. *See* Dkt. 14-5 at 7. The privilege log identified 26 redactions[2] purportedly protecting either attorney-client privileged information or work product. *See* Dkt. 14-6.[3] Plaintiff contends none of the redacted information is protected. *See generally* Dkt. 12.

2. Plaintiff's Interrogatory No. 3 asked Defendant to "[d]escribe each task or activity performed by [Defendant] or on [Defendant's] behalf as part of any investigation related to the Claim that is not expressly reflected, documented, or described in

---

[2] After Plaintiff filed this Motion, Defendant located additional documents responsive to Plaintiff's discovery requests and provided Plaintiff with an updated privilege log that accounts for allegedly privileged information in those documents. *See* Dkt. 15 at 4 n.20; Dkt. 18-10. As a result, Defendant's privilege log now contains 27 total redactions. *See* Dkt. 18-10.

[3] The privilege log also includes five redactions pertaining to reserves and sensitive personal information, like social security numbers. *See* Dkt. 14-6 at 3–4. Plaintiff does not challenge these redactions. Dkt. 12 at 5 n.2.

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 5

1   Your claim file . . . ." Dkt. 18-9 at 6.  Defendant responded by pointing Plaintiff

2   to the claim file and indicating that "[a]ny investigation activities not documented

3   in the claim file were performed either in anticipation of litigation or following

4   commencement of litigation, and are protected [by] the work product doctrine

5   and/or the attorney-client privilege." Dkt. 14-5 at 5–6.  However, because

6   Defendant's privilege log did not include any entries pertaining to documents or

7   information outside the claim file, Plaintiff contends Defendant is wrongfully

8   withholding documents related to its investigation of Plaintiff's claim while

9   refusing to provide Plaintiff with any basis for assessing its entitlement to do so.

10   Dkt. 12 at 5–6.

11   3.   Finally, Plaintiff's Interrogatory No. 8 asked Defendant to "[e]xplain the basis for

12   [Defendant's] August 2020 decision to accept coverage for [Plaintiff's] Claim."

13   Dkt. 18-9 at 8.  Defendant responded by asserting that the Interrogatory sought

14   information protected by the work product doctrine and/or attorney-client

15   privilege, and that Defendant "cured the plaintiff's complaint pursuant to their

16   IFCA complaint in the time allowed by statute." Dkt. 14-5 at 7.  Plaintiff

17   contends the requested information is discoverable.  *See generally* Dkt. 12.

18   On May 26, 2021, counsel for both parties conferred pursuant to Fed. R. Civ. Pro. 37(a)

19   regarding Defendant's discovery responses. Dkt. 14 ¶ 16.  The parties were unable to resolve

20   their dispute, *id.*, and on July 22, 2021, Plaintiff filed the present Motion to Compel.  *See* Dkt.

21   12.  Plaintiff asks the Court to compel Defendant to (1) produce of an unredacted version of its

22   entire claim file; (2) produce all documents relating to its investigation of Plaintiff's claim,

23   regardless of whether they appear in the claim file; and (3) provide a substantive response to

Interrogatory No. 8.  *See* Dkt. 12 at 13.  Plaintiff also asks the Court to award him his attorneys'
fees and costs incurred in bringing the Motion.  *Id.*

  C. <u>Defendant's Motion to Continue</u>

  On October 20, 2021, Defendant filed a Motion to Continue the case's trial date and
pretrial deadlines, in part because Plaintiff's Motion to Compel was still pending before the
Court.  *See* Dkt. 20.  Plaintiff opposed Defendant's Motion so far as it requested an extension to
the expert disclosure deadline, which Plaintiff alleged Defendant had already missed.  Dkt. 21 at
5–7.

  On January 18, 2022, the Court entered a Minute Order continuing the trial date to
August 1, 2022.  Dkt. 28.  The Order also continued certain pretrial deadlines, including the
dispositive motions and mediation deadlines.  *Id.*  The Order did not continue the expert
disclosure, motions, or discovery deadlines.  *Id.*

III. <u>DISCUSSION</u>

  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any
party's claim or defense and proportional to the needs of the case, considering the importance of
the issues at stake in the action, the amount in controversy, the parties' relative access to relevant
information, the parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.
Civ. P. 26(b)(1).  If requested discovery is not answered, the requesting party may move for an
order compelling the discovery.  Fed. R. Civ. P. 37(a)(1).

  Plaintiff's Motion to Compel primarily relates to documents and information Defendant
withheld on the basis of attorney-client privilege and the work product doctrine.  As a federal
court sitting in diversity, the Court applies state law to substantive issues and federal law to

procedural issues.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1939).  *See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *State Farm Fire & Casualty Co. v. Smith*, 907 F.2d 900, 902 (9th Cir. 1990).  The attorney-client privilege is governed by state substantive law, whereas the work product doctrine is governed by federal procedural law.  *See Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007).  The party resisting production bears the burden of persuading the Court that the attorney-client privilege or work product doctrine shield the requested information from discovery.  *See* Fed. R. Civ. P. 26(c); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

A.    Attorney-Client Privilege

The attorney-client privilege protects confidential disclosures made by a client to an attorney when obtaining legal advice, as well as the attorney's advice in response to such disclosures.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).  Applying Washington law, the Court considers attorney-client privilege in first-party bad faith insurance cases pursuant to *Cedell v. Farmers Ins. Co. of Washington*, 176 Wn.2d 686, 295 P.3d 239 (2013).

In that case, the Washington Supreme Court held that an insurer owes its first party insured a quasi-fiduciary duty to investigate and adjust the insured's claim in good faith.  *Cedell*, 176 Wn.2d at 696.  When the insured contends that this duty has been breached, the Court determined that the insured should have access to the entire claim file, and the insurer should not be permitted to refuse production "because of the participation of lawyers hired or employed by the insurers . . . ."  *Id.*  Per the Court, this type of blanket privilege "would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices."  *Id.* at 696–97.

Under *Cedell*, the Court therefore begins with the "presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process," and that the attorney-client privilege is "generally not relevant." *Cedell*, 176 Wn.2d at 699. An insurer may overcome this "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id.* Even if the insurer overcomes the presumption of discoverability, however, an insured may still pierce the attorney-client privilege by showing "a reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred" and by demonstrating "a foundation to permit a claim of bad faith to proceed." *Id.* at 700. Neither a mere allegation or claim of bad faith, nor an honest disagreement as to coverage between the insurer and the insured, suffices to waive attorney-client privilege under this standard. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611-JLR, 2014 WL 2526901, at *5 (W.D. Wash. May 27, 2014); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611-JLR, 2014 WL 3734286, at *7 (W.D. Wash. July 28, 2014)

In making a *Cedell* determination, a federal court may exercise its discretion to conduct an *in camera* review of the disputed documents to determine the capacity in which the attorney was acting. *MKB Constructors*, 2014 WL 2526901, at *7. Alternatively, the Court may adopt an equally or more appropriate procedure or mechanism, such as through review of a "privilege log, affidavit, declaration, or in any other manner permissible in federal court." *Id.*

B.      <u>Work Product Doctrine</u>

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."

1   Fed. R. Civ. P. 26(b)(3)(A).  *Cedell* is not applicable to documents withheld as work product.

2   *MKB Constructors*, 2014 WL 2526901, at *8.  Instead, the work product doctrine is governed by

3   Federal Rule of Civil Procedure 26(b)(3) and applicable federal case law.  *Id.* ("Although the

4   attorney-client privilege is a substantive evidentiary privilege, the work product doctrine is a

5   procedural immunity governed by [Rule] 26(b)(3).")

6       The work product doctrine only applies to documents prepared in anticipation of

7   litigation.  This means that if a document would have been created in substantially similar form

8   in the normal course of business, the fact that litigation is afoot will not protect it from discovery.

9   *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900, 908 (9th Cir. 2004).  When a document

10  serves a dual purpose—i.e., the document was not prepared exclusively for litigation—the Ninth

11  Circuit applies the "because of" standard.  *Id.* at 907.  This standard provides that dual purpose

12  documents are deemed prepared because of litigation if "in light of the nature of the document

13  and the factual situation in the particular case, the document can be fairly said to have been

14  prepared or obtained because of the prospect of litigation."  *Id.* (citation omitted).  In applying

15  the "because of" standard, courts do not consider "whether litigation was a primary or secondary

16  motive behind the creation of a document."  *Id.* at 908.  Instead, courts consider the totality of the

17  circumstances to determine whether the "document was created because of anticipated litigation,

18  and would not have been created in substantially similar form but for the prospect of litigation."

19  *Id.* (citation omitted).

20      Even if documents are prepared in anticipation of litigation, they still may be subject to

21  discovery if the requesting party shows "substantial need" for the materials and the inability to

22  obtain their equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(A)(ii).  When a court orders

23  disclosure of work product under this standard, however, "it must protect against disclosure of

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 10

the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  Such materials, known as "opinion" work product, represent the "core types of work product" the doctrine was designed to protect.  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014).

In a first-party bad faith insurance action, the insured may still be able to obtain "opinion" work product; however, doing so requires a "showing beyond the substantial need/undue hardship test required for non-opinion work product."  *Barge v. State Farm Mut. Auto. Ins. Co.*, No. C16-0249-JLR, 2016 WL 6601643, at *5 (W.D. Wash. Nov. 8, 2016) (cleaned up).  It requires the insured to demonstrate that the "mental impressions are at issue and their need for the material is compelling."  *Id.* (cleaned up).  "At a minimum, compelling need requires that the information sought is not available elsewhere or through the testimony of another witness."  *Id.*

C.    The Disputed Redactions

Defendant's updated privilege log, Dkt. 18-10, produced after Plaintiff filed his Motion, *see* Dkt. 15 at 4 n.20, reveals that thirteen redactions removed attorney-client privileged information, whereas fourteen redacted work product.  *See* Dkt. 18-10.[4]  The Court first considers the redactions implemented on the basis of attorney-client privilege.

/ / /

/ / /

---

[4] Defendant's privilege log does not indicate that any redactions pertain to information protected by both attorney-client privilege and the work product doctrine.  *See* Dkt. 18-10.  It is unclear from Defendant's Opposition, however, whether it now contends that <u>all</u> of the redacted information is actually protected work product.  *See* Dkt. 15 at 6–9.  Even so, Defendant's work product arguments only address documents and information related to its response to Plaintiff's IFCA notice, and none of the redactions implemented on the basis of attorney-client privilege relate to that IFCA response.  *See* Dkt. 18-10.  The Court therefore construes the basis for Defendant's redactions in accordance with its updated privilege log and not its Opposition.

1.     *Attorney-Client Privilege Redactions*

Plaintiff argues Mr. Adams performed quasi-fiduciary tasks relative to Plaintiff's claim by (1) assisting Defendant in determining how to respond to the claim, (2) drafting the response accepting coverage, (3) evaluating and processing Plaintiff's vandalism repair estimate, and (4) assisting Defendant's investigation by seeking a second inspection.  Dkt. 19 at 6.  Plaintiff further contends that Defendant's and Mr. Adams's declarations indicating Mr. Adams was not involved in the claims handling process are insufficient to meet Defendant's burden and rebut *Cedell*'s presumption of discoverability, meaning any information redacted on the basis of attorney-client privilege is discoverable.  *Id.* at 5–6.

Defendant argues Mr. Adams did not perform any quasi-fiduciary tasks—such as obtaining documents, interviewing witnesses, or taking exams under oath— and instead was engaged after Plaintiff sent the IFCA notice solely to provide legal advice to Defendant regarding its duties and obligations under the applicable policy.  Dkt. 15 at 9–10; Dkt. 16 ¶ 3; Dkt. 17 ¶ 3.

As indicated, in determining whether information or documents are properly withheld under *Cedell* based on attorney-client privilege, the Court considers the role and activities of the attorney.  *See Anderson v. Country Mut. Ins. Co.*, No. C14-0048-JLR, 2014 WL 4187205, at *3 (W.D. Wash. Aug. 25, 2014); *Lynch v. Safeco Ins. Co. of Am.*, No. C13-654-BAT, 2014 WL 12042523, at *3 (W.D. Wash. Mar. 7, 2014) ("[T]he attorney's job title is not dispositive; rather, the Court must look to the *activities* of the insurer's attorney.") (emphasis in original).  When acting as a "de facto claims handler," an attorney's communications likely will not be privileged. *Anderson*, 2014 WL 4187205, at *3.  However, when "clearly acting as coverage counsel and advising the insurer of its potential for liability, the communications will likely be privileged."

1   *Id.  See also id.* ("[T]here will likely be no privilege for a lawyer investigating facts to reach a

2   coverage decision, but there likely will be a privilege for a lawyer giving an insurer strictly legal

3   advice about potential liability that could result from a coverage decision or some other course of

4   action."); *Lear v. IDS Prop. Casualty Ins. Co.*, No. C14-1040-RAJ, 2016 WL 3033499, at *2

5   (W.D. Wash. May 27, 2016) ("In the insurance context, the question of whether a

6   communication falls within the attorney-client privilege can often be a difficult one because of

7   the investigatory nature of the insurance business.  The line between what constitutes claims

8   handling and the rendition of legal advice is often more cloudy than crystalline.  To the extent

9   that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation

10  monitor, and not as a legal advisor, the attorney-client privilege does not apply.") (cleaned up).

11          Courts in this District have held that drafting a response to an IFCA notice and engaging

12  in other claims-related correspondence constitutes claims processing and handling—i.e., quasi-

13  fiduciary tasks—for the purposes of *Cedell.  Mkt. Place N. Condo. Ass'n v. Affiliated FM Ins.*

14  *Co.*, No. C17-0625-RSM, 2018 WL 3956130, at *1 (W.D. Wash. Aug. 17, 2018) (finding that

15  "counsel engaged in at least some claims processing and handling by assisting in the drafting of

16  the four key letters," including an IFCA response); *Bagley v. Travelers Home & Marine Ins. Co.*,

17  No. C16-0706-JCC, 2016 WL 4494463, at *2 (W.D. Wash. Aug. 25, 2016) (finding that

18  responding to an IFCA notice constitutes claims handling and not "'providing the insurer with

19  counsel as to its own potential liability,'" so does not overcome the presumption against

20  privilege).  *Cf. Hopkins v. State Farm Mut. Auto. Ins. Co.*, No. C15-2014-JCC, 2016 WL

21  7103505, at *3 (W.D. Wash. Dec. 6, 2016) (finding that communications related to drafting an

22  IFCA response are privileged "to the extent they do not relate to the administration of [the]

23  claim.").  *See also Cedell*, 176 Wn.2d at 701 (recognizing that an attorney authoring and signing

the insurer's denial letter and initiating settlement negotiations with the insured qualified as quasi-fiduciary tasks).

Here, Mr. Adams drafted a response to Plaintiff's IFCA notice in which he advised Plaintiff's counsel of Defendant's decision to accept coverage, indicated that the biohazard and vandalism losses were two separate claims and that Defendant would "set up a second claim to address the renovations[,]" and asked Plaintiff to provide Defendant with an estimate to repair the renovations to the Rental Property.  Dkt. 14-3 at 2.  Mr. Adams also wrote to Plaintiff's counsel to dispute whether the estimate provided by Plaintiff included damage to the Rental Property not covered by Plaintiff's policy, outline the coverage and exclusions contained in that policy, and request a second inspection of the Rental Property.  Dkt. 18-7 at 2–3.  The Court is satisfied that both communications qualify as quasi-fiduciary claims handling for the purposes of *Cedell*.  The declarations provided by Mr. Adams, Dkt. 17, and Defendant, Dkt. 16, asserting that Mr. Adams engaged in no quasi-fiduciary tasks relative to Plaintiff's claim are insufficient to overcome the implication of this correspondence.  *See Mkt. Place N. Condo. Ass'n v. Affiliated FM Ins. Co.*, No. C17-625-RSM, 2018 WL 3390483, at *3 (W.D. Wash. July 12, 2018) ("AFM has not established solely through its declarations that the above exception to the *Cedell* rule applies . . . .");  *Everest Indem. Ins. Co. v. QBE Ins. Corp.*, 980 F. Supp. 2d 1273, 1279 (W.D. Wash. 2013) (granting motion to compel in the *Cedell* context when "the Court ha[d] only the assertions of QBE/CAU that [counsel's] role was limited")).  Mr. Adams performed at least some quasi-fiduciary tasks, and Defendant has failed to overcome the *Cedell* presumption of discoverability.

That being said, the Court cannot now determine whether the information redacted by Defendant is itself discoverable.  The descriptions in the privilege log—which fail to indicate the

title of the documents' author or who received the documents, and provide only a cursory

description of the documents' content, *see* Dkt. 18-10—do not enable the Court to assess

whether the redacted information strictly involves the provision of coverage counsel or other

legal advice (and is therefore privileged), or whether it pertains to quasi-fiduciary tasks

undertaken by Mr. Adams in investigating, evaluating, and processing Plaintiff's claim.  The

Court therefore finds an *in camera* review of the redacted information warranted.  *Stay@Home*

*Design LLC v. Foremost Ins. Co. Grand Rapids, Michigan*, No. C16-1673-MAT, 2017 WL

1101369, at *6 (W.D. Wash. Mar. 24, 2017) (granting *in camera* review when attorney acted in

both quasi-fiduciary and coverage counsel capacities to determine whether documents withheld

on the basis of attorney-client privilege were discoverable under *Cedell*).

Defendant is ORDERED to produce unredacted versions of the documents Defendant

alleges contain attorney-client privileged information within **fourteen (14) days** of this Order for

an *in camera* review by the Court.[5]

2.      *Work Product Redactions*

Defendant's privilege log indicates fourteen of the redactions in question redacted

information protected as work product.  *See* Dkt. 18-10.  Plaintiff argues that none of the

---

[5] Plaintiff contends that even if Defendant is able to successfully rebut the *Cedell* presumption relative to the redacted information, Plaintiff has pierced any remaining attorney-client privilege by making a colorable showing that Defendant engaged in bad faith. Dkt. 12 at 10–11. Specifically, Plaintiff contends bad faith is evident because Defendant (1) misrepresented Washington law and Plaintiff's policy in determining the vandalism claim was not covered for lack of malicious intent by the tenant; and (2) denied coverage for the biohazard claim on the ground that the Rental Property had sustained no physical damage, in spite of clear evidence to the contrary. *Id.* at 11. Defendant contends Plaintiff cannot demonstrate bad faith because in order to do so, "counsel's privileged communication must have formed a part of the alleged civil fraud[,]" and Plaintiff's allegations of bad faith occurred before Defendant retained Mr. Adams.  Dkt. 15 at 11.  The Court declines at this juncture to address Plaintiff's bad faith allegations.  Instead, it will exercise its discretion to undertake an *in camera* review of the redactions withheld on the basis of attorney-client privilege.  If it determines certain of the redacted information is entitled to protection under *Cedell*, it will assess bad faith at that time.  *See, e.g.*, *MKB Constructors*, 2014 WL 3734286, at *9; *Lynch*, 2014 WL 12042523, at *5–6; *Hawthorne v. Mid-Continent Cas. Co.*, No. C16-1948-RSL, 2017 WL 2363740, at *2 (W.D. Wash. May 31, 2017).

1   redacted information qualifies as work product because it was all prepared in the ordinary course

2   of Defendant's claims adjusting business.  Dkt. 12 at 12.  Defendant argues it only retained Mr.

3   Adams to review and respond to Plaintiff's IFCA notice and because IFCA notices are, "by their

4   very nature, threats of litigation," the "use of counsel in response to [them] is protected work

5   product." Dkt. 15 at 7–8.  Defendant further contends that the redacted information reveals Mr.

6   Adams's mental impressions relative to Defendant's rights and liabilities under Plaintiff's policy,

7   *see id.* at 8, meaning Plaintiff must demonstrate Mr. Adams's "mental impressions are at issue

8   and [Plaintiff's] need for the documents is 'compelling[,]'" *id.* at 9 (citation omitted), which

9   Plaintiff has failed to do.

10         The Court agrees Plaintiff has made no showing relative to his need for the redacted

11   information; however, Defendant has failed to demonstrate in the first instance that the

12   information qualifies as work product.  Documents produced after the threat of litigation are not

13   de facto cloaked in work product protection.  In the insurance context, "claim material . . . is

14   discoverable regardless of the commencement of litigation" when the insurer "and/or its

15   attorneys engaged in basic claims handling functions like hiring experts, investigating the cause

16   of the loss and the extent of the damage, and valuing property" because the insurer has "a duty to

17   do these things anyways."  *Perez v. Am. Fam. Ins. Co.*, No. C20-849RSM, 2021 WL 928180, at

18   *4 (W.D. Wash. Mar. 11, 2021).  *See also HSS Enterprises, LLC v. AMCO*, No. C06–1485–JPD,

19   2008 WL 163669 at *4 (W.D. Wash. Jan. 14, 2008) ("[I]nsurance companies have a duty to

20   investigate, evaluate, and adjust claims made by their insureds . . . . The creation of documents

21   during this process is part of the ordinary course of business of insurance companies, and the fact

22   that litigation is pending or may eventually ensue does not cloak such documents with work-

23   product protection.").

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 16

Thus, to the extent Mr. Adams was "investigating whether (and what) factual bases existed for providing or rescinding coverage under the policy," information generated by him is not shielded by the work product doctrine, "even if [it] include[s] mental impressions, conclusions, and opinions of [Mr. Adams] regarding the availability of coverage, because these impressions, conclusions, and opinions are part of the pure investigation and evaluation of coverage, not part of preparation for or anticipation of litigation." *HSS Enterprises, LCC*, No. 2008 WL 163669, at *6 (W.D. Wash. Jan. 14, 2008) (citations omitted).  In other words, this material, "even if generated by the defendant after the complaint was filed, was not prepared in anticipation of litigation if the material only concerned facts and did not involve legal opinions or thoughts about the defendant's trial strategy and posture." *Id.* (internal quotations and citation omitted).  To the extent the disputed redactions "concerned legal opinions, evaluations, or other thoughts about the trial strategy and posture of this coverage litigation," however, they are protected by the work product doctrine.  *Id.*

As with the information redacted on the basis of attorney-client privilege, the Court cannot determine from Defendant's privilege log whether the information redacted as work product was prepared in the ordinary course of Defendant's claims handling business, or whether it contains legal opinions or strategy pertaining to the anticipated litigation.

Defendant is therefore ORDERED to produce unredacted versions of the documents Defendant alleges contain protected work product within **fourteen (14) days** of this Order for an *in camera* review by the Court.  *See Hawthorne*, 2017 WL 2363740, at *3 (reviewing *in camera* documents withheld under *Cedell* for federal work product protection).

1    Because Plaintiff has failed to make a showing relative to his need for Defendant's work

2    product, the Court will permit Defendant to redact any work product information the Court

3    identifies in these documents.

4        D.    Documents and Information Withheld and Not Disclosed

5        Plaintiff moves to compel Defendant to produce all documents related to its investigation

6    of Plaintiff's claim, regardless of whether they appear in the claim file.  Dkt. 12 at 5–6, 13.

7    Defendant argues Plaintiff's belief that it is withholding responsive documents is "pure

8    speculation," and insists it has produced all relevant documents and information, with the

9    exception of (1) those identified in the privilege log, and (2) those contained in its separate

10   litigation file, which it contends are not subject to production.  Dkt. 15 at 4–5.

11       The Court agrees that documents contained in Defendant's separate litigation file are

12   likely (1) work product, and/or (2) privileged and not discoverable under *Cedell*.  *See Meier v.*

13   *Travelers Home & Marine Ins. Co.*, No. C15-0022RSL, 2016 WL 4447050, at *2 n.4 (W.D.

14   Wash. Aug. 24, 2016) ("The *Cedell* court advised insurers to set up and maintain separate files

15   for adjustment and non-adjustment activities in order to avoid the wholesale waiver of the

16   privilege that occurred here . . . . [T]here is no indication that the Supreme Court considered,

17   much less decided, whether the waiver would extend beyond the claims file to an insurer's

18   separate litigation files.  The Supreme Court's analysis suggests that the waiver would not reach

19   communications between an insurer and its bad faith litigation counsel if they were not co-

20   mingled with the claims file materials.").  But this does not absolve Defendant of its obligation to

21   account for such privileged or protected documents in its privilege log.  *See* Fed. R. Civ. P.

22   26(b)(5)(A).  Further, Defendant acknowledges that after Plaintiff filed his Motion, it identified

23

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 18

1    certain responsive documents not contained in its claim or litigation files which it had neither

2    produced nor identified in its privilege log.  Dkt. 15 at 4 n.20.

3         Plaintiff's Motion is therefore GRANTED.  Within **fourteen (14) days** of this Order,

4    Defendant is ORDERED to produce all non-privileged or work product protected documents

5    pertaining to its investigation of Plaintiff's claim, regardless of whether they appear in the claim

6    file.  To the extent Defendant contends documents are privileged or subject to work product

7    protection under the standards articulated above, Defendant is ORDERED to provide Plaintiff

8    with a supplemental privilege log properly reflecting its entitlement to withhold the documents.

9    The privilege log must contain sufficient information to enable Plaintiff to assess Defendant's

10   claim of privilege or protection from disclosure.  *See* Fed. R. Civ. P. 26(b)(5)(A).

11        If, after reviewing Defendant's supplemental privilege log and conferring with

12   Defendant, Plaintiff still disputes the propriety of Defendant withholding the documents, the

13   Court encourages the parties to make use of the expedited discovery dispute procedures

14   described in Local Civil Rule 37(a)(2).  Alternatively, Plaintiff may renew his Motion to Compel

15   within **twenty-one (21) days** of his receipt of the revised log.

16        E.    <u>Interrogatory No. 8</u>

17        Plaintiff moves to compel Defendant to provide a substantive response to Interrogatory

18   No. 8, which asked Defendant to "[e]xplain the basis for [Defendant's] August 2020 decision to

19   accept coverage for [Plaintiff's] Claim."  Dkt. 18-9 at 8.  Defendant opposes Plaintiff's Motion,

20   arguing it is "unaware of any authority addressing an insurer's obligation to explain the basis for

21   acceptance of coverage" and that the basis for its decision to accept coverage is not relevant.

22   Dkt. 15 at 11.  Defendant further contends that "[a]n IFCA cure is akin to a subsequent remedial

23   measure[,]" meaning any information pertaining to it is inadmissible.  *Id.* (citing ER 407).

1   Finally, Defendant argues that requiring insurers to explain their decision to extend coverage

2   after receiving an IFCA notice would defeat the purpose of IFCA's notice provision by

3   disincentivizing insurers to cure claims.  *Id.* at 12.

4       "The Federal Rules . . . allow for broad discovery," and parties "may obtain discovery

5   regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  *Everest*

6   *Indem. Ins. Co.*, 980 F. Supp. 2d at 1278 (citations omitted).  Relevant information for the

7   purposes of discovery is information "reasonably calculated to lead to the discovery of

8   admissible evidence."  *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th

9   Cir.2005).  District courts have broad discretion in determining relevance for discovery purposes.

10  *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

11      Here, Defendant's decision to accept coverage after previously denying it is relevant to

12  several of Plaintiff's claims, and Defendant provides no basis for concluding otherwise.  For

13  example, Plaintiff's declaratory judgment claim seeks declarations that (among other things)

14  Defendant's investigation of Plaintiff's claim and its denial of coverage were unreasonable.  Dkt.

15  1 ¶ 21.  Similarly, Plaintiff's breach of contract claim alleges Defendant breached its duties

16  under the policy to conduct a reasonable investigation and pay for all covered losses.  *Id.* at ¶ 22.

17  And Plaintiff's insurer bad faith claim alleges Defendant breached its duty to act in good faith by

18  (among other things) failing to conduct a reasonable investigation of Plaintiff's claim.  *Id.* at

19  ¶ 25.  To the extent Defendant decided to accept coverage after previously denying it because it

20  realized its investigation of Plaintiff's claim was inadequate and its denial of coverage was

21  unreasonable, its decision is relevant to Plaintiff's allegations in this lawsuit.

22      Further, even assuming an IFCA cure is akin to a subsequent remedial measure (an

23  argument Defendant fails to support with any citation to authority), that just means evidence

1   pertaining to the cure is inadmissible to prove, among other things, negligence or culpable

2   conduct on the part of Defendant.  *See* ER 407.  It does not mean the information is not

3   discoverable if otherwise relevant.  *See Bagley v. Travelers Home & Marine Ins. Co.*, No. C16-

4   0706-JCC, 2016 WL 8738672, at *4 (W.D. Wash. July 5, 2016).

5        Finally, Defendant misses the mark in arguing that the purpose of IFCA's notice

6   provision would be defeated if insurers were required to explain the bases for their after-the-fact

7   decisions to extend coverage.  IFCA enables insurers to avoid litigating bad faith insurance

8   claims by curing unreasonable denials of coverage before lawsuits are even filed.  Where, as

9   here, an insurer agrees to extend coverage following receipt of an IFCA notice, but then

10  continues to dispute the reasonableness of the insured's claim in court, the purpose of IFCA's

11  notice provision is already defeated.

12       Plaintiff's Motion is GRANTED.  Within **fourteen (14) days** of this Order, Defendant is

13  ORDERED to provide a substantive response to Plaintiff's Interrogatory No. 8 to the extent the

14  information is not privileged or protected under the standards articulated above.

15       F.     Plaintiff's Motion for Attorneys' Fees and Costs

16       Plaintiff asks the Court to grant him his attorneys' fees and costs incurred in bringing his

17  Motion to Compel, arguing Defendant's discovery positions are not "substantially justified."

18  Dkt. 12 at 13.

19       Under Fed. R. Civ. P. 37(a)(5), if the Court grants a motion to compel or if the requested

20  discovery is provided after the motion is filed, the Court must "require the party . . . whose

21  conduct necessitated the motion, the party or attorney advising conduct, or both to pay the

22  movant's reasonable expenses incurred in making the motion, including attorney's fees[,]"

23  unless the opposing party's nondisclosure was "substantially justified."

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 21

1   Plaintiff's Motion primarily seeks an order compelling Defendant to produce information

2   redacted from Plaintiff's claim file.  The Court cannot determine at this juncture whether

3   Defendant's nondisclosure of this information was substantially justified, as it does not yet know

4   whether the information falls within the *Cedell* exception to discoverability and/or constitutes

5   work product.  The Court therefore declines to rule on Plaintiff's request for attorneys' fees and

6   costs at this time.  The Court will revisit Plaintiff's request following its *in camera* review of the

7   redacted documents and will also address Plaintiff's request relative to the other disputed

8   discovery at that time.

9       G.      Defendant's Motion to Continue

10   Defendant moves the Court for an order extending the case schedule.  *See* Dkt. 20.

11   Plaintiff opposes Defendant's Motion as to the expert disclosure deadline only, which Plaintiff

12   alleges Defendant had already missed when it brought its Motion.  Dkt. 21 at 5–7.

13   Defendant filed its Motion on October 20, 2021, the date on which the parties' expert

14   disclosures were due under the prior scheduling Order.  *See* Dkt. 11.  Defendant does not dispute

15   that it failed to meet the expert disclosure deadline.  *See* Dkt. 23 at 2–3.  Instead, Defendant

16   argues this failure was justified because (1) it thought the parties had agreed to a continuance

17   prior to the expert disclosure deadline passing, and did not learn otherwise until the day of the

18   deadline; and (2) the parties were still engaged in extensive discovery when the deadline passed,

19   some of which Defendant's expert needed to complete his or her report.  *Id.*

20   Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified

21   only for good cause and with the judge's consent."  The good cause standard "primarily

22   considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations*,

23   Inc., 975 F.2d 604, 609 (9th Cir. 1992).  In other words, "[t]he district court may modify the

scheduling order 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Id.* (quoting Fed. R. Civ. P. 16 Advisory Comm. Notes (1983 amendment)).  If the party seeking the extension "was not diligent," then good cause does not exist and the inquiry should end.  *Id.*

The Court finds Defendant was sufficiently diligent to justify extending the expert disclosure deadline.  While Defendant did not disclose its expert information by the deadline, it understood that the parties had agreed to continue case deadlines and did not learn otherwise until the day expert disclosures were due—the same day on which it filed its Motion.  Dkt. 23 at 1–2.  The Court also finds good cause for extending certain pretrial deadlines not reset by the Court's January 18, 2022 Minute Order, Dkt. 28—specifically, the motions and discovery cutoff deadlines—because (1) both deadlines passed while Plaintiff's Motion to Compel was still pending, and (2) the rulings contained herein necessarily extend discovery in this case.  In order to extend these pretrial deadlines and enable the parties to meaningfully engage in continued discovery and motions practice, however, the trial date and additional pretrial deadlines must also be reset.

Defendant's Motion to Continue, Dkt. 20, is GRANTED.  The trial date and related pretrial deadlines are reset as follows:

| Event | Date |
|---|---|
| **JURY TRIAL SET FOR 9:00 a.m. on** | **10/24/2022** |
| Disclosure of expert testimony under FRCP 26(a)(2) due | 3/28/2022 |
| Disclosure of rebuttal expert testimony under FRCP 26(a)(2) due | 4/27/2022 |
| All motions related to discovery must be filed by | 4/27/2022 |
| Discovery to be completed by | 5/27/2022 |

| | |
|---|---|
| All dispositive motions must be filed by | 6/27/2022 |
| Settlement Conference per LCR 39.1(c)(2) held no later than | 7/26/2022 |
| Mediation per LCR 39.1(c) held no later than | 8/25/2022 |
| All motions in limine must be filed by | 9/19/2022 |
| Agreed LCR 16.1 Pretrial Order due | 10/3/2022 |
| Trial briefs, proposed voir dire questions, proposed jury instructions, deposition designations, and exhibits due by | 10/11/2022 |
| Pretrial conference set for 10:00 a.m. on | 10/14/2022 |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel, Dkt. 12, is GRANTED IN PART.  Within **fourteen (14) days** of the date of this Order, Defendant is ORDERED to (1) produce unredacted versions of the documents Defendant alleges contain attorney-client privileged information for an *in camera* review by the Court; (2) produce unredacted versions of the documents Defendant alleges contain work product for an *in camera* review by the Court; (3) produce all non-privileged or protected documents pertaining to Defendant's investigation of Plaintiff's claim, regardless of whether they appear in the claim file, and provide Plaintiff with a supplemental privilege log properly reflecting Defendant's claimed entitlement to withhold any responsive documents; and (4) provide a substantive response to Plaintiff's Interrogatory No. 8.

Defendant's Motion to Continue, Dkt. 20, is GRANTED.  The trial date and related pretrial deadlines are reset as outlined above.

/ / /

/ / /

/ / /

ORDER ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE - 24

1        The Clerk is directed to send copies of this Order to the parties and to the Honorable

2  Lauren J. King.

3        Dated this 2nd day of March, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER ON PLAINTIFF'S MOTION TO
COMPELL AND DEFENDANT'S MOTION TO
CONTINUE - 25